UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 13 CR 410

ALEX PUZAITZER,

Defendant.

------------------------------x

New York, N.Y.
October 17, 2014
12:00 Noon

Before:

HON. DEBRA C. FREEMAN,

District Judge

APPEARANCES

PREET BHARARA
United States Attorney for the
Southern District of New York
JENNIFER EILEEN BURNS
Assistant United States Attorney

WINSTON & STRAWN, LLP
BY: GERALD SHARGEL
ROSS KRAMER
Attorneys for Defendant

Present: Special Agent Rebecca Vassilakos, FBI

(In open court; defendant present)

THE DEPUTY CLERK: United States v. Alex Puzaitzer.

Counsel, state your names for the record.

MS. BURNS: Jennifer Burns for the government. And I'm joined at counsel table today by Special Agent Rebecca Vassilakos of the FBI.

Good afternoon, your Honor.

MR. SHERGEL: Winston and Strawn by Gerald Shargel and Ross Kramer.

THE COURT: All right. I gather this is referred by Judge Buchwald?

MS. BURNS: That is correct, your Honor.

THE COURT: For a plea as to?

MS. BURNS: There is a superseding information with three counts.

THE COURT: Three counts of the fourth superseding information.

Has the defendant already been presented on these three charges?

MS. BURNS: On the prior, on the indictment, the S2 indictment, yes. But this is the first time he is appearing on this.

THE COURT: Are these new charges?

MS. BURNS: Yes. Well, count three is the only new charge contained in this.

THE COURT: Well, if he has never been presented on a particular charge, I need to start by presentment with respect to the new charge.

MS. BURNS: Right.

THE COURT: So there is one charge that is new.

MS. BURNS: The felony possession charge.

THE COURT: All right. Have a seat, everybody.

Let me start, Mr. Puzaitzer, by informing you of certain rights that you have. First of all, you have the right to remain silent. You are not required to make any statements. Even if you have already made statements to the authorities, you need not make any further statements. Anything you do say can be used against you.

You have the right to be represented by counsel with respect to this charge against you during all court proceedings and also during any questioning by the authorities. If you cannot afford an attorney, you are entitled to have counsel appointed for you.

You are here with counsel. Counsel will represent you with respect to any new charges that you are facing at this time, as well as any prior charges.

The new count that is being asserted against you is a violation of Title 18 of the United States Code Section 922(g)(1), which makes it a crime for a person who has previously been convicted of a felony -- in other words a crime

punishable by imprisonment of more than a year -- to knowingly possess a firearm, which has been shipped and transported in interstate commerce. This felony in possession charge, as it's sometimes referred to, carries with it a number of possible sanctions, including possible jail time.

Counsel, have you received a copy of the fourth superseding information containing this charge.

MR. SHERGEL: Yes, we have.

THE COURT: Have you had a chance to go over it with your client?

MR. SHERGEL: Yes.

THE COURT: All right.

Because I gather you are seeking to waive indictment and proceed by way of this information, let's start with the waiver of indictment.

THE DEPUTY CLERK: Mr. Puzaitzer, did you sign this Waiver of Indictment?

THE DEFENDANT: Yes, I did.

THE DEPUTY CLERK: Before you signed it, did you discuss it with your attorney?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Did your attorney explain it to you?

THE DEFENDANT: Yes, he did.

THE DEPUTY CLERK: Do you understand what you are

doing?

THE DEFENDANT: Yes.

THE COURT: Do you understand that you are under no obligation to waive indictment?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Do you understand that if you do not waive indictment, if the government wants to prosecute you, they will have to present this case to a grand jury which may or may not indict you?

THE DEFENDANT: Yes, I do.

THE DEPUTY CLERK: Do you understand that by signing this waiver of indictment, you have given up your right to have this case presented to a grand jury?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Do you understand what a grand jury is?

THE DEFENDANT: Yes.

THE DEPUTY CLERK: Have you seen a copy of the fourth superseding information?

THE DEFENDANT: Yes, I did.

THE DEPUTY CLERK: Do you waive its public reading?

THE DEFENDANT: Yes.

THE COURT: Off the record for one moment, please. Sorry.

(Off the record)

THE COURT: Back on the record, I apologize.

All right. Mr. Puzaitzer, this information, the fourth superseding information, charges you with felony crimes. And you have a right to a trial on those charges before a United States District Judge. If you are found guilty, you will be sentenced by a United States District Judge and, ordinarily, a defendant who wishes to enter a plea to these types of charges would do that before the district judge as well, who would then conduct a so-called plea allocution which is the question and answer session that must accompany the entry of a plea. However, with a consent, then a United States Magistrate Judge, such as myself, also has the authority to take a plea. If you were to consent to proceed before a United States Magistrate Judge for the purpose of entering the plea, you would receive all of the same procedural protections as you would receive if you were proceeding before the district judge.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Is it your wish to consent to proceed before a magistrate judge for the purpose of entering a plea?

THE DEFENDANT: Yes.

THE COURT: I have a consent form that has been handed up. It is entitled Consent To Proceed Before A United States Magistrate Judge on a felony plea allocution.

Did you sign this form?

THE DEFENDANT: Yes, I did.

THE COURT: Before you signed it, did you discuss it with your attorney?

THE DEFENDANT: Yes.

THE COURT: Did he explain it to you?

THE DEFENDANT: Yes.

THE COURT: Have any threats or promises of any type been made to cause you to agree to this procedure today?

THE DEFENDANT: No.

THE COURT: I will accept the consent.

In order to take your plea, I must ask you some questions from which I need to place you under oath.

Would you please raise your right hand.

(Defendant sworn)

THE COURT: Please state your full name for the record.

THE DEFENDANT: Alex Puzaitzer.

THE COURT: Are you a United States citizen?

THE DEFENDANT: Yes.

THE COURT: How old are you?

THE DEFENDANT: Fifty-three years.

THE COURT: How far did you go in school?

THE DEFENDANT: It was in Russia. Went through, I would say, college.

THE COURT: Equivalent of U.S. college?

THE DEFENDANT: Yes. In a way, yes.
THE COURT: Okay.
THE DEFENDANT: It was different then, but, you know.
THE COURT: You are a naturalized citizen?
THE DEFENDANT: Yes.
THE COURT: Have you now -- or are you now, or have you recently been, under the care of a doctor for any reason?
THE DEFENDANT: No.
THE COURT: How about a psychiatrist or psychologist?
THE DEFENDANT: No.
THE COURT: Do you take any medication?
THE DEFENDANT: No.
THE COURT: Do you have any condition that affects your ability to see or to hear?
THE DEFENDANT: No.
THE COURT: Do you have any condition that affects your ability to think or to reason or to understand or make decisions or judgments on your own behalf?
THE DEFENDANT: No.
THE COURT: Have you ever been treated for drug addiction or alcoholism?
THE DEFENDANT: No.
THE COURT: As you appear before me today, are you under the influence of any kind of drugs or alcohol or medication?

THE DEFENDANT: Not at all.

THE COURT: Do you generally feel all right today?

THE DEFENDANT: Yes.

THE COURT: Do you have any trouble understanding my questions I'm asking you?

THE DEFENDANT: No.

THE COURT: I gather you have received a copy of the fourth superseding information; is that right?

THE DEFENDANT: Yes.

THE COURT: Have you had a chance to read it, or do you want me to take the time to read it to you.

THE DEFENDANT: I had a chance to read it.

THE COURT: Do you understand what it says you did?

THE DEFENDANT: Yes.

THE COURT: Have you had enough time to talk to your attorney about the charges and about how you wish to plead?

THE DEFENDANT: Yes, I did.

THE COURT: Are you satisfied with the representation and advice given to you by your counsel?

THE DEFENDANT: Yes, I do.

THE COURT: Yes, you are?

THE DEFENDANT: Yes.

THE COURT: Are you ready to enter a plea?

THE DEFENDANT: Yes, I do.

THE COURT: All right.

I'm going to take these counts one at a time and ask how you wish to on plead to each one of them, separately.

Count one, alleges that you violated Title 18 of the United States Code Section 371, which makes it a crime to conspire with others to commit offenses against the United States. Here, more specifically, to commit securities fraud.

How do you wish to plead to that conspiracy charge, guilty or not guilty?

THE DEFENDANT: Guilty, your Honor.

THE COURT: All right. Count two charges that you violated Title 18 of the United States Code Section 1951, which makes it a crime to conspire with others to commit extortion in this case.

How do you wish to plead to that charge, guilty or not guilty?

THE DEFENDANT: Guilty, your Honor.

THE COURT: Count three charges that you violated Title 18 of the United States Code, Section 922(g)(1), which as I previously explained to you, makes it a crime for someone who was previously convicted of a felony to possess a firearm.

How do you wish to plead to that charge, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: All right. Because you are proposing to enter a plea of guilty to each of these charges, I to have ask

you some additional questions to be sure that you understand the nature of each of these charges, and the consequences of your plea and, also, to ensure that your plea was voluntary.

First, I want you to understand that if you are convicted of the first count contained in the information, which is the conspiracy to commit securities fraud, you could face, on that count alone, a maximum sentence of five years in prison, a maximum term of supervised release of three years, a maximum fine of the greatest of $250,000, or twice the gross pecuniary gain that you derive from the offense, or twice the gross pecuniary loss to persons other than yourself resulting from the offense, and a mandatory special assessment of $100.

Do you understand all of that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that if you are convicted of the second count contained in the information, that's the conspiracy to commit extortion, you could face, on that count alone, a maximum sentence of 20 years imprisonment, a maximum term of supervised release of three years, a maximum fine of, again, the greatest of $250,000, or twice the gross pecuniary gain or loss resulting from the offense. And, again, a mandatory special assessment of $100.

Do you understand all of that?

THE DEFENDANT: Yes, I do.

THE COURT: Now, on count three, do you understand

that if convicted of that charge, that is the felon in possession of a firearm charge, you could face, on that count alone, a maximum sentence of 10 years imprisonment, a maximum term of supervised release of three years, a maximum fine of, again, the greatest of -- well, actually, maximum fine of $250,000 and, again, a mandatory special assessment of $100.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you are convicted of all three of these charges, the total maximum sentence you could face would be 35 years imprisonment?

THE DEFENDANT: Yes, I do.

THE COURT: Do you also understand that if convicted of these charges, you may face an order that you pay restitution to any victims of the offenses. Do you understand that if you are convicted of these charges you may face an order from the Court that you pay restitution to any victims of the crimes?

THE DEFENDANT: I do.

THE COURT: Do you also understand that if you were convicted of the first count, the conspiracy to commit securities fraud, you could be required to forfeit to the government all property, real and personal, that constitutes or derives from the proceeds traceable to that crime.

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that if, as part of your sentence you are placed on a term of supervised release and you then violate any condition of that release, your supervised release may be revoked and you may face an additional term of imprisonment?

THE DEFENDANT: I do.

THE COURT: Do you understand that if that should happen, you may not get credit for time served on supervised release. In other words, the Court could require you to serve, in prison, all or part of the term of supervised release that is authorized by law for these offenses without giving you credit for time you may have already served on supervised release.

THE DEFENDANT: I do.

THE COURT: Do you understand that you have a right to plead not guilty to these charges, and the right to a speedy and public trial, and a jury trial if you wish.

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you were to go to trial, the burden would be on the government to prove your guilt by competent evidence, beyond a reasonable doubt?

THE DEFENDANT: Yes.

THE COURT: Do you understand that if you were to go to trial, you would be presumed to be innocent unless and until the government did prove your guilt beyond a reasonable doubt?

THE DEFENDANT: I do.

THE COURT: Do you understand that if you were to go to trial by jury, a jury composed of 12 people selected from this district would have to agree unanimously that you are guilty?

THE DEFENDANT: Yes.

THE COURT: We need to hear an answer so the court reporter can record one.

THE DEFENDANT: Yes. Yes.

THE COURT: Do you understand that, at a trial, you would be entitled to be represented by an attorney at all stages, and if you could not afford to hire one, an attorney would be provided to you free of charge?

THE DEFENDANT: Yes.

THE COURT: Do you understand that your right to be represented by counsel and, if necessary, to have the Court appoint counsel for you, applies not only to the trial, but also to every other stage of the proceedings against you?

THE DEFENDANT: I do.

THE COURT: Do you understand that at a trial you would be entitled, through your attorney, to cross-examine any witness called by the government to testify against you?

THE DEFENDANT: I do.

THE COURT: Do you understand that, at a trial, you would be entitled to testify, and to present evidence on your

own behalf?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that this means that you would be entitled to call witnesses to testify on your behalf?

THE DEFENDANT: I do.

THE COURT: Do you also understand that you would be entitled to have the Court issue subpoenas to compel witnesses to appear to testify at trial?

THE DEFENDANT: I do.

THE COURT: Do you understand that at a trial you would not be required to incriminate yourself; that is, you would not be required to testify against yourself?

THE DEFENDANT: I do.

THE COURT: Do you understand that this means that at a trial you would have the right to testify if you wanted to do so, but no one could force you to testify if you did not want to do so. And, furthermore, no suggestion or inference of guilt could be drawn if you chose not to testify.

THE DEFENDANT: I do.

THE COURT: Do you understand that if you go forward with your guilty plea, you will be giving up all of the types of protections that I have just described, including your very right to a trial. And the only remaining step would be the imposition of sentence by the district judge, in this case, who is Judge Buchwald.

THE DEFENDANT: I do.

THE COURT: Do you understand that if any of the answers that you give me today prove to be untruthful, you could face a separate prosecution for perjury or for making a false statement to the Court?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that if your guilty plea is accepted and you are adjudged guilty, that adjudication may deprive you of valuable civil rights, such as the right to vote or hold public office, or to serve on a jury, or to possess a firearm?

THE DEFENDANT: I do.

THE COURT: Do you understand that the decision as to the appropriate sentence in your case will be entirely up to Judge Buchwald.

THE DEFENDANT: I do.

THE COURT: Do you understand that Judge Buchwald will have discretion in determining your sentence, and that her discretion will be limited only by what the law requires for these particular charged offenses?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that, in determining your sentence, the Court will have to consider the so-called sentencing guidelines, even though it will not be required to sentence you within the guidelines range?

THE DEFENDANT: I do.

THE COURT: Have you and your attorney had a chance to talk about how the guidelines may be calculated in your case?

THE DEFENDANT: Yes, we did.

THE COURT: Do you understand that the Court will not be able to determine the guidelines for your case until after a presentence report has been completed and both you and the government have had a chance to challenge the facts reported there by the probation officer?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that, even after the guidelines calculation has been made for a case, the sentencing judge will have the authority to impose a sentence that is either less severe or more severe than the sentence recommended by the guidelines as long as it is within the statutory maximum for the crime?

THE DEFENDANT: I do.

THE COURT: Do you understand that in addition to considering the sentencing guidelines, the Court will also have to consider possible departures from the guidelines and also a number of different factors in deciding on the appropriate sentence to impose in your case?

THE DEFENDANT: I do.

THE COURT: Do you understand -- let me ask. Have you and your attorney had the chance to talk about the various

factors that are listed in the relevant provision of law that is titled 18 U.S. Code Section 3553(a), and about how those different factors may apply to you in your particular case?

THE DEFENDANT: Yes, we did.

THE COURT: Do you understand that those factors include, but are not limited to, the actual conduct in which you engaged, the victims of the offenses, the role you played in the offenses, whether or not you have accepted responsibility for your acts, whether you have any criminal history, and whether you have engaged in any obstruction of justice?

THE DEFENDANT: Yes.

THE COURT: Do you understand that even if you end up shocked and disappointed by your sentence, you will still be bound by your guilty plea?

THE DEFENDANT: Yes.

THE COURT: Do you understand that under some circumstances, you or the government may have the right to appeal the sentence that is imposed?

THE DEFENDANT: Yes.

THE COURT: Do you understand that there is no parole in the federal system, and that if you are sentenced to prison, you will not be released on parole?

THE DEFENDANT: Yes.

THE COURT: Understanding everything that I have now

told you, do you still wish to plead guilty?

THE DEFENDANT: Yes, I do.

THE COURT: I have a copy of the plea agreement in this case. It is a letter dated October 17, 2014 from the Office of the United States Attorney to your counsel.

Did you sign this plea agreement?

THE DEFENDANT: Yes.

THE COURT: Before you signed it, did you discuss it with your attorney?

THE DEFENDANT: Yes, I did.

THE COURT: Did he explain to you all of its terms and conditions?

THE DEFENDANT: Yes, he did.

THE COURT: In reviewing the plea agreement, I note that it contains an analysis as to how the sentencing guidelines may be calculated in your case. And based on that analysis, the agreement states the conclusion that if the guidelines were applied, you could expect the sentence to be from 51 and 63 months imprisonment. Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that Judge Buchwald will not be bound by the guidelines calculation contained in the plea agreement, and that she will do her own analysis which may result in a guidelines range that is different from the one stated in the plea agreement.

THE DEFENDANT: I do.

THE COURT: Do you understand that, even if Judge Buchwald agrees with the guidelines calculation contained in the plea agreement and, therefore, concludes that under the guidelines the appropriate range for a sentence in your case would be from 51 to 63 months imprisonment, she would still be free to impose a prison term that is even less than 51 or more than 63 months?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that you are agreeing in this plea agreement that no so-called departure from the guidelines range set out in the plea agreement will be warranted, and you will not seek one, even though you are reserving your right to seek a sentence outside of the guidelines based on those factors set out in Section 3553(a)?

THE DEFENDANT: Yes.

THE COURT: Do you understand that as long as you are sentenced to a prison term of no more than 63 months, you are giving up your right to challenge that sentence both by appeal to the Court of Appeals and also by any further application to this Court?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that under the terms of this plea agreement, even if it turns out that the government illegally withheld from your counsel certain information that

would be helpful to you in defending yourself at trial, you are giving up your right to complain about that?

THE DEFENDANT: I do.

THE COURT: Do you understand that under the terms of this plea agreement, you are admitting the forfeiture allegation contained in the information with respect to count one, and you are agreeing to forfeit to the United States, $400,000 in United States currency, representing the gross proceeds traceable to the commission of the crime charged in count one?

THE DEFENDANT: Yes.

THE COURT: Do you understand that under the terms of this plea agreement, you are agreeing, with respect to count three, that's the felon in possession charge, to waive any defenses you may have based on venue. Based on whether or not the crime had a connection to the Southern District of New York, in other words.

THE DEFENDANT: Yes, I do.

THE COURT: Before I go further, are there any other provisions of the plea agreement that either counsel would like me to review with Mr. Puzaitzer?

MR. SHERGEL: No, your Honor.

THE COURT: To make sure he understands.

MS. BURNS: No, your Honor.

MR. SHERGEL: No, I believe he understands.

THE COURT: Apart from what is in the plea agreement itself, have any promises of any kind been made to you to influence to you plead guilty?

THE DEFENDANT: No.

THE COURT: Have any promises been made to you regarding the actual sentence you will receive?

THE DEFENDANT: No.

THE COURT: Do you understand that no one, including your attorney, or the government, or this Court, can give you any assurance as to what your sentence will be, as your sentence will be determined solely by the sentencing judge, after that judge has ruled on any challenges to the presentence report and has determined whether there are grounds to adjust the guidelines range or to sentence you outside of that range.

THE DEFENDANT: Yes.

THE COURT: Have any threats been made against you, either directly or indirectly, to influence how you plead today.

THE DEFENDANT: No.

THE COURT: Is your plea voluntary and made of your own free will?

THE DEFENDANT: Yes.

THE COURT: Before I ask you what you did that makes you guilty of these crimes, let me ask the government to please summarize the elements of each crime that it would have to

establish at trial in order to sustain that charge.

MS. BURNS: Yes, your Honor.

As to count one, conspiracy to commit securities fraud, the government would prove, first, that the conspiracy charged existed. That is, that there was agreement or understanding to commit a federal crime.

Second, that the defendant knowingly became a member of that conspiracy.

Additionally, as to this charge, the government would prove, first, that in connection with the purchase or sale of securities, the defendant did any one or more of the following:

First, employed a device, scheme, or artifice to defraud; or made an untrue statement of a material fact; or omitted to state a material fact which made what was said, under the circumstances, misleading; or engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.

Second, that the defendant acted knowingly, willfully with the intent to defraud.

And third, that the defendant used, or caused to be used, any means or instruments of transportation or communication in interstate commerce in furtherance of this fraudulent conduct.

As to count two, conspiracy to commit extortion.

Again, the government would prove that the conspiracy

charged existed. And that the defendant knowingly became a member of that conspiracy. And, additionally, under Section 1951, would prove that: The defendant took or obtained the property of another or attempted to do so; second, that the property was taken with the other person's consent, but that the consent was compelled by the wrongful use of actual or threatened force, violence, or fear of injury or economic harm, whether immediate or in the future; third, that such actions actually or potentially, in any way or degree, did or would have obstructed, delayed, or affected interstate commerce; and finally, that the defendant acted willfully and knowingly.

As to count three, the felon in possession charge, the government would prove: First, that the defendant was previously convicted of a felony; second, that the defendant knowingly possessed a firearm and that the defendant possessed the firearm in or affecting interstate commerce.

THE COURT: And the government would also have the burden of proving venue with respect to these crimes by a preponderance of the evidence.

Mr. Puzaitzer, did you just now hear each of the elements of these crimes that the government would have to prove at trial in order to obtain a conviction against you on the different counts.

THE DEFENDANT: Yes.

THE COURT: Do understand that with respect to each

count, the government would to have prove each element of the crime beyond a reasonable doubt in order to prevail in its case against you.

THE DEFENDANT: Yes, I do.

THE COURT: Do you still wish to proceed with your plea?

THE DEFENDANT: Yes.

THE COURT: Did you, then, commit the offenses that you are charged with in the fourth superseding information?

THE DEFENDANT: Yes, I did.

THE COURT: Can you please tell us, in your own words, what you did that makes you guilty of each of these crimes, starting with count one, conspiracy to commit securities fraud.

THE DEFENDANT: Yes. Pleading guilty to count one, because between 1999 and 2013, in Southern District of New York and elsewhere, I conspired with others to commit securities fraud. In connection with this conspiracy, I agreed with others to engage in acts and practices that would operate as a fraud of purchasers and sellers of securities.

I'm pleading guilty to count two --

THE COURT: Hold on a second. Let's stop with count one for a moment.

THE DEFENDANT: Yes.

THE COURT: You agreed with others to engage in acts of fraud. Can you give me a little bit of an understanding,

factual understanding, as to what it was you agreed to do?

THE DEFENDANT: Yes. I agreed with others to artificially manipulate the price of stock.

Can we go to count two?

THE COURT: Well, I'm just considering the elements of that crime. So you agreed with others to artificially manipulate the price of stock, with the understanding that the market would be misled? Is that fair? Or investors would be misled as to the true value of the stock?

THE DEFENDANT: Yes.

THE COURT: Did you understand what it was you were agreeing to do when you agreed with at least one other person to engage in this conduct? Did you understand what it was you were agreeing to do?

THE DEFENDANT: Yes.

THE COURT: Did you know that it was against the law to make an agreement with someone to artificially alter the price of stock?

THE DEFENDANT: Yes.

THE COURT: Or to manipulate the price.

And you were here in Manhattan at the time that you engaged in this conduct when you entered into this agreement, is that right?

THE DEFENDANT: Yes.

THE COURT: Either counsel believe any additional

facts need to be elicited for a satisfactory allocution for count one?

MS. BURNS: As to the final element instrument or communication --

THE DEFENDANT: Yes.

MS. BURNS: -- the government would prove, and I think defense would agree, he used the telephone during the course of the conspiracy as part of committing this fraud.

MR. SHERGEL: That is correct.

THE COURT: Is that correct, Mr. Puzaitzer?

THE DEFENDANT: Yes.

THE COURT: All right.

Let's move then to count two. What did you do that makes you guilty of the conspiracy to commit extortion?

THE DEFENDANT: I'm pleading guilty to count two, because between 2012 and 2013, in the Southern District of New York and elsewhere, I conspired with others to commit extortion. In connection with this conspiracy, I agreed with others to take money with the wrongful use of threats or economic harm.

THE COURT: That's of economic harm?

THE DEFENDANT: Harm.

THE COURT: Can you give me a little better understanding as to what you mean by "threat of economic harm."

THE DEFENDANT: Yes. I agreed with others to threaten

individual with ruining his business reputation if he did not return the money that he has taken.

THE COURT: When you agreed to engage in this conduct, were you in Manhattan? Were you here? You said Southern District of New York and elsewhere, so --

THE DEFENDANT: Yeah.

THE COURT: -- what did you do that was either Manhattan or the Bronx?

THE DEFENDANT: Yeah, it was Manhattan.

THE COURT: You were in Manhattan.

MS. BURNS: There were meetings that took place with this defendant, and others, related to the extortion count in Manhattan.

THE COURT: Is that correct?

THE DEFENDANT: Yes.

THE COURT: Could I have a proffer about the obstruction or delay of articles which would have had an affect on interstate commerce?

MS. BURNS: Yes, your Honor, what the defendant and his co-conspirators were seeking to obtain was $400,000 connected to a prior securities transaction, which would have had an effect on interstate commerce.

THE COURT: Do either counsel believe we need additional facts to be elicited for a satisfactory allocution of count two?

MR. SHERGEL: No, your Honor.

MS. BURNS: No, your Honor.

THE COURT: Let's move to count three.

Let me ask, did you know that it was against the law to agree with others to engage in extortion, as you described it; did you know it was against the law --

THE DEFENDANT: Yes.

THE COURT: -- to agree with others to engage in extortion as you have described.

THE DEFENDANT: Yes.

THE COURT: Let's move to count three.

THE DEFENDANT: I'm pleading guilty to count three because on April 4, 2015, in the Eastern District of New York I possessed a firearm. I had previously been convicted of a felony. With regards to count three, I agree to waive the defense based on venue, and plead guilty in this court.

THE COURT: What was the prior felony of which you were convicted?

THE DEFENDANT: It was possession of stolen money orders 20-something years ago.

THE COURT: It was a number of years ago? I'm sorry.

THE DEFENDANT: It was 23 or 24 years ago.

THE COURT: Okay. So it was prior to April 2013.

THE DEFENDANT: Yeah.

THE COURT: Did you know it was against the law,

having previously been convicted of a felony, to possess a firearm?

THE DEFENDANT: Yes.

THE COURT: May I have a proffer on the shipment and transporting of interstate commerce.

MS. BURNS: Yes, your Honor.

The government proffers that the firearm that was found in the defendant's home on April 4, 2013 had been manufactured outside of the State of New York.

THE COURT: Do either counsel believe any additional facts need to be elicited for a satisfactory allocution of count three?

MS. BURNS: No, your Honor.

MR. SHERGEL: No, your Honor.

THE COURT: All right, then. Let me ask both counsel the final questions.

One, do either of you believe that any additional questions, of any kind, should be posed to Mr. Puzaitzer today; and, second, do either of you know any reason why I should not recommend acceptance of his plea?

MR. SHERGEL: The answer is no to both questions.

MS. BURNS: No to both, your Honor.

THE COURT: All right, then. Based on my colloquy with Mr. Puzaitzer, I conclude that he understands the nature of the three charges against him and the consequences of his

plea. I am also satisfied that the plea is voluntary and that there is a factual basis for the plea with respect to each of the three counts.

I'll also note for the record that I see no issue here with respect to Mr. Puzaitzer's competence to enter a plea. He did seem fully able to participate in these proceedings today. Accordingly, I hereby recommend that Judge Buchwald accept the proffered plea to counts one, two, and three of the fourth superseding information and S-413 CR 410.

Has Judge Buchwald set a sentencing date?

MS. BURNS: Yes, your Honor, for January 30, 2015 at 2:30.

THE COURT: All right. Is there any issue here as to bail?

MS. BURNS: No, your Honor. We recommend that bail be continued as set.

THE COURT: I'm going to ask the government to prepare the prosecution case summary for purposes of the presentence report, and to deliver it to the probation department no later than 14 days from today.

I'm going to ask defense counsel, please, to schedule with the probation department a presentence interview of your client and to make yourself available for that interview. Please schedule that interview also within 14 days from today, so that the matter can be moved along properly.

I assume the government will order a copy of the transcript of this allocution, and will submit it together with any necessary additional paperwork, to Judge Buchwald so she may act on my recommendation.

MS. BURNS: Yes, your Honor.

THE COURT: Is there anything else?

MR. SHERGEL: Judge, just to clarify. It is no longer the case to go to probation, physically, now, or.

THE COURT: I'm sorry?

MR. SHERGEL: Just get in touch with probation and get the interview done in 14 days?

THE COURT: Get the interview scheduled within two weeks, yes.

MR. SHERGEL: We needn't go there at this moment, right?

THE COURT: No.

MR. SHERGEL: Used to be the case that after the guilty plea, you go directly to probation.

THE COURT: Well, you can.

MR. SHERGEL: Well, we won't. But we will take care of it.

THE COURT: Talk to probation about their requirements and what it is they need from you. But as far as I'm concerned, what I'm asking to you do is make sure the interview gets scheduled and not delayed.

MR. SHERGEL: Done.

THE COURT: So that the matter can proceed appropriately.

MR. SHERGEL: Not a problem.

THE COURT: All right. Is there anything else?

MS. BURNS: No, your Honor, thank you.

THE COURT: Nothing else?

MR. SHERGEL: No, your Honor.

THE COURT: All right. Best of luck to you, Mr. Puzaitzer.

THE DEFENDANT: Thank you.

(Adjourned)